UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HILL, personal representative
of the Estate of Stewart Hill, deceased,

        Plaintiff,

v.

IONIA, COUNTY OF, *et al.*,

        Defendants.

_____/

Case No. 1:22-cv-320

Hon. Jane M. Beckering

## REPORT AND RECOMMENDATION

Plaintiff Gregory Hill is the personal representative of the Estate of Stewart Hill, deceased.  Compl. (ECF No. 1).  Stewart Hill (sometimes referred to as "Mr. Hill") died on March 22, 2019.  *Id*.  Plaintiff has sued Ionia County (named as "Ionia, County of"), Jack Shattuck (Chairman County Board of Commissioners), Jon Hess (Jail Administrator), RN Mary Simson, Mid-Michigan Correctional Care, P.C., Clinton County Medical Center, Andrew Messenger, D.O., and Sheriff Charlie Noll.  *Id*. This matter is now before the Court on a motion to dismiss filed by defendants Ionia County, Shattuck, Hess, and Sheriff Noll (collectively referred to as the "Ionia County Defendants") (ECF No. 12).

### I.      Background

#### A.      The common allegations

Plaintiff's complaint includes the following allegations relevant to the Ionia County Defendants' motion to dismiss.  Stewart Hill was arrested on March 19, 2019 and "remanded to the Ionia County Correctional Center/Jail" (the "Correctional Center")  Compl. at PageID.9.  He

was held in the Correctional Center from March 19, 2019, through March 22, 2019.  *Id*.  On March

22, 2019, at 4:52 a.m., Mr. Hill "was standing at the cell door with a sign that said 'HELP'."  *Id*.

at PageID.10.  Non-party Deputy Little responded and spoke to Mr. Hill at 4:53 a.m.  *Id*.  Non-

party Deputy Lewis was called to the cell.  *Id*.  Mr. Hill told Deputy Lewis he was having shortness

of breath and tightness of the chest.  *Id*.  Deputy Lewis took Mr. Hill's blood pressure, found it

was elevated, and gave him two aspirins.  *Id*. at PageID.11.  Deputy Lewis called defendant RN

Simison at 5:01 a.m., who recommended aspirin and to recheck the blood pressure in one hour.

*Id*.  Per RN Simison's instructions, Deputy Lewis requested non-party Deputy Levinson to take

Mr. Hill's blood pressure, which was done at 5:27 a.m.  *Id*.  The blood pressure had risen and Mr.

Hill was placed in a holding cell at 5:32 a.m.  *Id*.

　　　　　RN Simison "acknowledged that she was informed by Deputy Lewis that [Mr. Hill]

was experiencing tightness in his chest, shortness of breath and left jaw pain yet failed to

recommend immediate emergency care, intervention and transport for the obvious signs of pending

cardiac condition/arrest."  *Id*.  According to the record, Mr. Hill collapsed at 5:33 a.m. and  Deputy

Levinson found him on the floor seizing.  *Id*.  No pulse was found, an EMS was called at

approximately 5:36 a.m., and CPR was initiated until the EMS arrived.  *Id*.

> According to the record, EMS arrived at approximately 5:48 a.m. and
> provided emergency care. [Mr. Hill] was transported from the correctional facility
> at approximately 6:02 a.m. It was noted, [Mr. Hill] at the time, was able to answer
> questions.

*Id*.  Mr. Hill was transported to the hospital.  *Id*.  "Given the time delay in transporting [Mr. Hill]

from the correctional facility to the hospital, resuscitation was unsuccessful and [Mr. Hill] was

pronounced dead on March 22, 2019, at approximately 6:59 a[.]m."  *Id*. at PageID.12.  Mr. Hill's

cause of death was acute myocardial infarction.  *Id*.  Based on this history, "Defendants knew or

should have known by way of intake assessment that [Mr. Hill] had noted cardiac signs and

symptoms of chest tightness upon presentation to the correctional center on March 19, 2019." *Id.*

### B.    The causes of action

#### 1.    Count I (Civil rights violation pursuant to 42 U.S.C. § 1983)

In this count, plaintiff alleged that "[a] progressing cardiac condition is a serious

medical need."  Compl. at PageID.13.  With respect to the Ionia County Defendants, plaintiff

alleged that:

> 78. Defendants, under the color of state law, acted with deliberate indifference to
> [Mr. Hill's] life threatening medical needs and his serious risk of a fatal heart attack
> during his confinement at the Ionia County Correctional Center in violation of his
> Constitutional rights.  .  .  .
>
> 80. Defendants failed to have in place the necessary policies and procedures to
> attend to an inmate with emergency cardiac symptoms, acting in disregard to the
> constitutional rights of the inmates to provide adequate and necessary care for the
> health and safety of its inmates.
>
> 81. At all times relevant County of Ionia, Ionia County Board of Commissioners,
> Ionia County Sheriff's Department and the Ionia County Corrections Center/Jail,
> through those defendants in their individual and official capacity, failed to
> promulgate the necessary rules, policies and procedures in disregard of the harm it
> may cause.

*Id.*[1]

#### 2.    Count II (Negligence/Medical Negligence)

In this count, plaintiff alleged that defendants Mid-Michigan Correctional Care,

P.C., Clinton Correctional Care Clinic, RN Simison, and Dr. Messenger, were health care

providers who contracted with Ionia County.  Plaintiff alleged that these health care providers were

---

[1] The Court notes that Count I includes allegations which appear to conflate the federal constitutional violation with
common law negligence or medical malpractice, *e.g.*, "County of Ionia, Ionia County Board of Commissioners, Ionia
County Sheriff's Department, and Ionia County Correctional Center through Shattuck, Noll and Hess including
Simison R.N. and Messenger D.O. had a duty to provide for the safety and general well-being of [Mr. Hill], including
providing proper policies and procedures, and adequate and necessary medical attention within the standard of care..
[sic]"  Compl. at PageID.13 (emphasis added).

negligent and essentially committed medical malpractice in treating the decedent's medical emergency.  Compl. at PageID.14-19. To the extent plaintiff has any claims against the Ionia County Defendants, those claims are the federal constitutional claims brought pursuant to 42 U.S.C. § 1983 as alleged in Count I.

   3.     **Count III (Wrongful death pursuant to Michigan's Wrongful Death Act")**

       In this state law claim, plaintiff adopted the previous allegations and stated, "[t]hat as fair and just measure of such pecuniary injuries, Plaintiff seeks all damages allowed under the Wrongful Death Statute of the State of Michigan, specifically MCL 600.2922(6)."  Compl. at PageID.19.  Plaintiff's claim for damages under Michigan's wrongful death statute, M.C.L. § 600.2922(6), is not an independent state law action.  *See Chomic v. United States*, 377 F.3d 607, 612 (6th Cir. 2004) ("Michigan law does not create an independent cause of action for wrongful death").  Rather, the cause of action recognized in Michigan's Wrongful Death Act "is a derivative one whereby the personal representative of the deceased stands in the latter's shoes." *Id*.  Because plaintiff has no federal cause of action against the Ionia County Defendants, *see* discussion, *infra*, these four defendants have no liability Michigan's wrongful death statute as alleged in Count III.

   **II.     Discussion**

       The Ionia County Defendants appear to raise two separate arguments.  First, the complaint failed to state a plausible claim for relief against them.  Second, they are entitled to qualified immunity.

   **A.     Legal standard**

       The Ionia County Defendants seek to dismiss the counts against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and on the basis of qualified immunity.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

### B.    Federal claims against the Ionia County Defendants

### 1.    Count I

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

The complaint does not allege the constitutional provision or federal statute which defendants violated in Count I. In this regard, plaintiff claims that "defendants":

acted with deliberate indifference to [the decedent's] life threatening medical needs and his serious risk of a fatal heart attack during his confinement at the Ionia County Correctional Center in violation of his Constitutional rights  .  .  . [and] failed to have in place the necessary policies and procedures to attend to an inmate with emergency cardiac symptoms, acting in disregard to the constitutional rights of the

5

inmates to provide adequate and necessary care for the health and safety of its inmates.

*Id*. at PageID.13.  Count I also includes a claim against various governmental entities related to their policies and procedures:

> At all times relevant County of Ionia, Ionia County Board of Commissioners, Ionia County Sheriff's Department and the Ionia County Corrections Center/Jail, through those defendants in their individual and official capacity, failed to promulgate the necessary rules, policies and procedures in disregard of the harm it may cause.

*Id*.

Based on these allegations, plaintiff appears to allege that defendants were deliberately indifferent to a serious medical need, which would be a violation of Mr. Hill's rights under either the Eighth Amendment (if Mr. Hill was a post-conviction inmate) or the Fourteenth Amendment (if Mr. Hill was a pretrial detainee).  However, the complaint does not allege Mr. Hill's custodial status, stating,

> On March 19, 2019, [Mr. Hill] was arrested by the Ionia County Sheriff's Department and charged with failure to appear at a show cause hearing for arrearages in child support. He was subsequently remanded to the Ionia County Correctional Center/Jail.

Compl. at PageID.9.

Whether the decedent was held as a convicted inmate or a pre-trial detainee, the standard for deliberate indifference to a serious medical need is the same.  "Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well."  *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005)  (internal citation omitted). It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual

punishment proscribed by the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97 (l976). "Whether a convicted prisoner or a pretrial detainee, deliberate indifference to one's need for medical attention suffices for a claim under 42 U.S.C. § 1983." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  A court considering such a claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  The objective component requires the infliction of serious pain or failure to treat a serious medical condition.  *Id.* at 8-9.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.*  at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety.  *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Mere negligence in diagnosing or treating a medical condition does not constitute an Eighth Amendment violation.  *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### 2.    Plaintiff's claims against defendants Shattuck, Hess and Noll in their individual capacities

In Count I, plaintiff alleged that Mr. Hill had a serious medical need which met the objective prong of a deliberate indifference claim, and has sued defendants Noll, Hess, and Shattuck in their individual capacities.  However, plaintiff did not allege that defendants Noll, Hess or Shattuck had any personal involvement in Mr. Hill's medical treatment from March 19, 2019 through March 22, 2019.  "Personal involvement is necessary to establish section 1983 liability." *Murphy v. Grenier*, 406 Fed. Appx. 972, 974 (6th Cir. 2011).  *See Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999) ("It is axiomatic that the liability of persons sued in their individual capacities under section 1983 must be gauged in terms of their own actions.").  In addition, these three individual defendants cannot be held responsible simply because they held supervisory positions at Ionia County or the Correctional Center.  *See Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) ("Supervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Rather, the supervisors must have actively engaged in unconstitutional behavior.") (internal quotation marks and citations omitted); *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996) ("A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis.").  As the Sixth Circuit reiterated in *Greene v. Crawford County, Mich.*, 22 F.4th 593, 607 (6th Cir. 2022), "At the second prong [of a deliberate indifference claim], because we cannot "impute knowledge from one defendant to another, we must evaluate each defendant individually" (internal quotation marks and brackets omitted).

In summary, plaintiff has failed to state a federal constitutional claim against defendants Shattuck, Hess and Noll in their individual capacities.  Accordingly, their motion to dismiss should be granted on that basis.

### 3.    Plaintiff's claims against Ionia County and defendants Shattuck, Hess and Noll, in their official capacities

Plaintiff has also sued Ionia County, and defendants Shattuck, Hess and Noll in their official capacities.   As an initial matter, plaintiff's "official capacity" claims against defendants Shattuck, Hess and Noll are treated as claims against the entity, Ionia County.  "A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir.1994) (citing *Will v. Michigan Department of State Police*, 491 U.S. 58, 68 (1989)).  As the Supreme Court explained:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.  *See, e.g., Scheuer v. Rhodes*, 416 U.S. 232, 237-238, 94 S.Ct. 1683, 1686-1687, 40 L.Ed.2d 90 (1974).  Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 [(]1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.  *Brandon* [*v. Holt*,] 469 U.S. [464,] 471-472, 105 S.Ct., at 878, 83 L.Ed.2d 878.  It is *not* a suit against the official personally, for the real party in interest is the entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (emphasis in original) (footnote omitted).

Next, Ionia County's liability under § 1983 must be based on more than respondeat superior, or the right to control its employees.  *See Monell v. Department of Social Services*, 436 U.S. 658, 691, 694-95 (1978); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Hays v. Jefferson County, Ky.*, 668 F. 2d 869, 874-875 (6th Cir. 1982).  "[A] municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005). "In other words, a municipality can be liable under § 1983 only where its policies are 'the moving force' behind the constitutional violation." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998).

The gist of plaintiff's claim is that defendants violated decedent's federal constitutional rights because: Ionia County entered into a medical services contract; defendants Shattuck, Hess, and Noll were the "overseers" of that contract: and the contracted medical providers were deliberately indifferent to Mr. Hill's serious medical needs.  *See* Compl. at PageID.7-8.  These allegations do not support a claim for a federal constitutional violation.   As the Sixth Circuit stated in *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018),

> [T]his court has made clear that it is not "unconstitutional for municipalities and their employees 'to rely on medical judgments made by [private] medical professionals responsible for prisoner care[,]' " *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004), a holding that necessarily leads us to conclude that a municipality may constitutionally contract with a private medical company to provide healthcare services to inmates.

*Winkler*, 893 F.3d at 901.

Accordingly, plaintiff has failed to state a federal constitutional claim against defendant Ionia County and defendants Shattuck, Hess, and Noll in their official capacities. Accordingly, the motion to dismiss should be granted on that basis.

### 4.    Qualified Immunity

Under the affirmative defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  .  .  Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11-12 (2015) (internal quotation marks omitted).  Thus, the doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments, and

protects all but the plainly incompetent or those who knowingly violate the law." *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

"When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity." *Livermore ex rel Rohm v. Lubelan*, 476 F.3d 397, 403 (6th Cir. 2007).  The Sixth Circuit applies a two-tiered inquiry in reviewing the dismissal of a claim on qualified immunity.  *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

> The first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated it.

*Id*. (internal quotation marks omitted).

"To survive the motion to dismiss on qualified-immunity grounds, the plaintiff must allege facts that plausibly make out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Courtright*, 839 F.3d at 518 (internal quotation marks and brackets omitted).  "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  "An official's conduct flunks this 'clearly established' test only if the conduct's unconstitutionality was 'beyond debate' when the official acted, such that any reasonable person would have known that it exceeded constitutional bounds." *DeCrane v. Eckart*, 12 F.4th 586, 599 (6th Cir. 2021).  As discussed, *supra*, plaintiff's claim has failed at the first inquiry, because he did not allege facts that that defendants Shattuck, Hess and Noll violated the decedent's constitutional rights.   Accordingly, these defendants are also entitled to qualified immunity.

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' Ionia County, Jack Shattuck, Jon Hess, and Charlie Noll's motion to dismiss (ECF No. 12) be **GRANTED** and that they be **DISMISSED** from this case.

Dated:  January 3, 2023                                  /s/ Ray Kent
                                                         RAY KENT
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).